**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-191-JBC**

**THOMAS AND KING, INC.,**                                             **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**ANDRES JARAMILLO,**                                            **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on plaintiff Thomas and King, Inc.'s motion for summary judgment or, alternatively, for judgment on the pleadings (R. 7) and motion to dismiss defendant's counterclaim (R. 5) and defendant Andres Jaramillo's motion to stay his counterclaim (R. 3) and motion to withdraw his motion to stay his counterclaim (R. 24).

The court, having reviewed the record and being sufficiently advised, will grant the plaintiff's motion for summary judgment.  Given that resolution, plaintiff's motion to dismiss the counterclaim will be denied without prejudice and defendant's motions to stay his counterclaim and to withdraw that motion to stay will be denied as moot.

**I.   Facts and Procedural History**

Andres Jaramillo, the defendant, was employed by plaintiff Thomas and King, Inc. ("Thomas and King"), from August, 2003, until some time in the fall of

2007.[1]  As of September of 2004, Jaramillo's job duties included the training of new employees.[2]

On or about September 17, 2004, Raul Delgado, Jaramillo's supervisor, presented Jaramillo with a document entitled "Thomas and King Policy Sheet" ("Policy Sheet").  The Policy Sheet contains several paragraphs describing various policies and procedures of the company.  To the left of each paragraph is a space for the employee's initials.  One of these paragraphs is entitled "Agreement for Dispute Resolution Program" ("Agreement").   At the end of the document is a list of the eleven policies included in the Policy Sheet and a statement declaring "I agree that I have read and understand the policies stated above and that these policies are subject to change," followed by a space for the employee's name, signature, and date.  Jaramillo admits that he initialed next to the Agreement and signed the Policy Sheet. (R. 4, ¶ 3; R. 20, exhibit 2, Declaration of Andres

-----

[1]Because this a motion for summary judgment, the court will consider the evidence presented in the light most favorable to the non-moving party, Jaramillo. The plaintiff states that Jaramillo was dismissed on or about October 1, 2007.  (R. 1, attachment 1, ¶4). Jaramillo denies this statement but offers no alternate date of dismissal, stating only that he left for vacation in October of 2007 and was terminated at some point after his return (R. 4, ¶ 4).

[2]Plaintiff describes Jaramillo's job as "Training Manager," a promotion awarded in September of 2004.  A letter to Jaramillo confirming his new assignment as Training Manager and duly authenticated by a Thomas and King employee was submitted by the plaintiff.  (R. 21, exhibit 3, Affidavit of Dana Brummett).  Defendant admits that he was involved in training at some point after August of 2003 (R. 4, ¶5) but denies he was a Manager in September of 2004. (R. 20, exhibit 2, Declaration of Andres Jaramillo, ¶ 7).  As explained below, this court does not find this dispute material to its determination.

Jaramillo, ¶¶ 3, 6).

The Agreement states:

I understand and agree that Thomas & King, Inc. (the "Company") has adopted the Dispute Resolution Program, and that I received an explanation of the Program with my orientation materials. I agree that in the event a dispute arises between the Company and me, I will utilize all steps in the Dispute Resolution Program to submit any dispute arising during or following my employment with the Company to binding arbitration. I understand that binding arbitration will be the sole and exclusive method for resolving any claims or disputes. I understand and agree that the Company may change or delete provisions of the Dispute Resolution Program at any time, but that it will not eliminate my right to binding arbitration with an independent arbitrator. I understand that the Dispute Resolution Procedure does not create any contract of employment for my benefit, express or implied, and that it does not alter my status as an at-will employee of the Company, i.e. I may quit or the Company may terminate me at any time. The Federal Arbitration Act governs the interpretation, enforcement and proceedings under the Dispute Resolution Program.

According to Jaramillo, he was not given sufficient time to review the document and was encouraged to sign the document and return to work. (R. 20, exhibit 2, ¶5). Jaramillo further asserts that he then told Delgado that he did not think that the Policy Sheet applied to him because he was not a manager. *Id.* ¶7. Jaramillo states that Delgado then agreed that the document did not apply to Jaramillo. *Id.*

Thomas and King initially brought this matter before the court by moving for a declaratory judgment that the Agreement signed by Jaramillo is a valid and enforceable contract, requiring him to submit any dispute to arbitration. Jaramillo then filed with this court a counterclaim requesting relief under Title VII, 42 U.S.C. §2000(e) and K.R.S. 344.04 for unlawful termination.

3

Thomas and King have moved for summary judgment or, in the alternative, for a judgment on the pleadings, and have moved to dismiss the defendant's counterclaim.  The defendant moved to stay his counterclaim pending the Equal Employment Opportunity Commission's issuance of a letter granting permission for him to sue or the expiration of its exclusive jurisdiction on October 1, 2008.  The defendant has recently filed the EEOC letter and requests that the court permit him to withdraw his motion to stay.[3]

## II.  Legal Standard

Before considering the defendant's counterclaim, this court must determine whether the Agreement between the parties is a valid and enforceable arbitration agreement.

The plaintiff's motion for summary judgment or for a judgment on the pleadings is made under Fed. R. Civ. P. 12(c) and 56.  Matters outside the pleadings have been presented to this court, including the Policy Sheet, the Dispute Resolution Program rules, and various statements by the parties.  *See* R. 7, exhibit 1; R. 21, exhibits 2 and 3; R. 20, exhibits 2 and 3.  Thus, Fed. R. Civ. P. 12(d) requires that the 12(c) motion be treated as one for summary judgment.  *See* Fed.

---

[3]The plaintiff's motion to dismiss the defendant's counterclaim is based on an argument that the counterclaim is premature and is improperly verified.  The plaintiff has not yet responded to the defendant's recent filing and motion to withdraw the motion to stay.  However, given the court's resolution of the plaintiff's motion for summary judgment, the issue of whether the counterclaim should for any reason be dismissed is moot.

R. Civ. P. 12. The court therefore will apply the standards of Fed. R. Civ. P. 56.

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-moving party's case. *Id.* at 324–25.  To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e).   The court must view all of the evidence in the light most favorable to the party opposing summary judgment.  See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Analysis

### A.   The defendant's Declaration is improper Rule 56 evidence.

Jaramillo has submitted an unsigned declaration ("Declaration") (R. 20, exhibit 2), which was attached to his supplemental response to the plaintiff's motion for summary judgment, and Jaramillo's attorney stated in that pleading that a signed version of the declaration would be filed when he received it from Jaramillo.  R. 20, n. 4.  No such signed declaration has been filed with this court.

Jaramillo, as the non-moving party, was obligated to submit evidence

5

sufficient to demonstrate that a genuine dispute as to a material fact exists

between the parties.  When a motion for summary judgment is made and

supported,

> an opposing party may not rely merely on allegations or denials in its own
> pleading; rather its response must—by affidavits or as otherwise provided in
> this rule—set out specific facts showing a genuine issue for trial.  If the
> opposing party does not so respond, summary judgment should, if
> appropriate, be entered against the party.

Fed. R. Civ. P. 56(e)(2).

A signed declaration made under penalty of perjury is an acceptable

substitute for a signed, sworn, and duly notarized affidavit.  28 U.S.C. § 1746; *see*

*e.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002);  *Staples v.*

*PML, Inc.*, No. 07-1092, 2008 WL 2894389 (W.D. Tenn. July 23, 2008).

Jaramillo's unsigned declaration does not fall within the ambit of the exception

provided by this statute.  Therefore, it is not proper Rule 56(e) evidence.

Evidence not meeting the requirements of Rule 56(e) "may be considered by

the district court unless the opposing party affirmatively raises the issue fo the

defect.  The burden is on the opposing party to object to the improper evidence;

failure to object constitutes a waiver."  *Bennett v. Univ. Hospitals of Cleveland*,

981 F.Supp. 1065 (N.D. Ohio 1997).  The plaintiff has noted the insufficiency but

has not objected.  *See* R. 21 p.3 (describing Declaration as "unattested"); R. 21 p.

10 ("The unsigned 'Declaration' tendered by Defendant in his Supplemental

Response does not create a question of fact as to any material issue.") .

6

A statement made in an opposing party's pleadings may be sufficient to lodge an objection to the court's use of improper Rule 56(e) evidence. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 479–81 (6th Cir. 2008). While the law of the Sixth Circuit requires no specific procedure, the opposing party must at least highlight the evidentiary problem with the statement.[4]   *Id.*

Here, the plaintiff's two statements do not operate as objections to the Declaration. The plaintiff failed to identify the evidentiary problem created by the statement's lack of signature. Thus, neither of the plaintiff's statements is an "objection."

When the opposing party fails to raise the issue of the defect, the court, in its discretion, may choose to consider such evidence. *See Gault v. Zellerbach*, 981 F.Supp. 533, 536 (N.D. Ohio, 1997); *see also U.S. v. Dibble*, 429 F.2d 598 (9th Cir. 1970)(Wright, J., concurring). In exercising its discretion, however, the court must be guided by the law. *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) (citing *U.S. v. Burr*, 25 F. Cas. No. 14, 35 (CC Va. 1807)(Marshall, C.J.)).

A court's use of improper Rule 56 evidence is disfavored. *See Moore v.*

---

[4]In *Sigler*, the district court had relied on three different experts' reports, all unsworn, in granting the defendant's motion for summary judgment. 532 F.3d at 479–80. On appeal, the plaintiff argued that the district court should not have used the letters as evidence. *Id.* The defendant responded that the plaintiff could not raise this issue on appeal because it had failed to object to the trial court. *Id.* The Sixth Circuit Court of Appeals disagreed, finding that the plaintiff had objected below by including in its responses to the defendant's motion for summary judgment language describing the reports as "inadmissible hearsay" and "hearsay reports" and asserting that the reports were "clearly hearsay," and thus "inadmissible." *Id.*

*Holbrook*, 2 F.3d 697, 698–99 (6th Cir. 1993) (refusing to overturn district court

on grounds it had considered improper Rule 56(e) evidence because argument was

not raised below but acknowledging such use was error, as documents not meeting

requirements of Rule 56(e) must be disregarded).

The deficiency of the Declaration is significant and calls into question the

reliability of the facts it purports to assert.  Its lack of signature is not a technical

deficiency, such as a missing notary seal.  Because of the magnitude of the

deficiency and the defendant's failure to offer any evidence to support assertions

made in the Declaration, the court is hesitant to attach much weight to it.[5]  Or, to

put it another way, the unsigned declaration is insufficient evidence to overcome

the plaintiff's motion for summary judgment.  *See Mason v.Clark*, 920 F.2d 493,

495 (8th Cir. 1990) ("We have no hesitation in stating that an unsigned affidavit is

not sufficient evidence in support of a motion for summary judgment."); *see also*

*Nassif Ins. Agency v. Civic Property and Cas. Co.*, No. 03-2618, 2005 WL 712578

(6th Cir. March 30, 2005).

B.      There is no genuine dispute of material fact as to whether the Agreement is a
        valid and enforceable contract.

The plaintiff argues that it is entitled to a declaratory judgment as a matter of

---

[5]As discussed in the next section of this opinion, even if the Declaration were
proper Rule 56(e) evidence and given full evidentiary weight, the facts it alleges
would not be sufficient to overcome the plaintiff's motion for summary judgment.

law because the defendant has not come forward with facts on which a reasonable jury could rely in finding for the defendant.  Specifically, the plaintiff asserts that the defendant cannot demonstrate that the Agreement is an invalid and unenforceable contract.

In order to determine whether Jaramillo must submit his claim to arbitration, the court must determine whether a valid agreement to arbitrate exists between the parties and then whether Jaramillo's claims fall within the scope of that agreement. *See Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559 (6th Cir. 2008) (citation omitted).  Jaramillo does not argue that his claims against Thomas and King fall outside the scope of the arbitration agreement.  Rather, he contends that no valid agreement to arbitrate exists between the company and himself.

The Federal Arbitration Act expresses a strong federal public policy favoring arbitration, including arbitration of employment disputes.  *See* Federal Arbitration Act, 9 U.S.C. § 1 (the "FAA"); *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) (citing *Circuit City Stores v. Adams*, 532 U.S. 105, 122–23 (2001)).  "It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

The validity of an arbitration clause is a matter of contract law and should be reviewed with reference to state law of contract formation. *Seawright v. Am. Gen.*

9

*Fin. Servs.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chicago, Inc.*, 514 U.S. 938, 943–44 (1995)).  Here, the court will apply Kentucky law. The agreement was executed in Kentucky (R. 1, attachment 1, ¶3), Thomas and King has its principal place of business in Kentucky (R. 1, attachment 1, ¶1), and neither party argues for another state's law to apply.  *See Cooper*, 367 F.3d at 499 (declaring the district court correctly applied Tennessee law because the agreement was executed there, the alleged statutory violation occurred there, and "neither party expected any other state's law to apply"). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law."  *Cooper*, 367 F.3d at 498 (quoting *Garrett v. Hooters-Toledo*, 295 F.Supp.2d 774, 779 (N.D. Ohio 2003)).

"[A]bsent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate."  *See Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir. 2000), *overruled on other grounds by Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003); *see also DeOrnellas v. Aspen Square Mgmt., Inc.*, 295 F.Supp.2d 753, 764 (E.D. Mich. 2003) (explaining that even after *Morrison* the Sixth Circuit continues to follow a contract-law approach to determining the validity of an arbitration agreement).

As stated above, the parties do not dispute that Jaramillo initialed the Agreement and signed the Policy Sheet.  Jaramillo's state contract-law arguments

are: (1) the agreement is not valid because there was no mutual assent, or "meeting of the minds"; (2) the agreement is not valid because it was not supported by consideration; and (3) the agreement is not valid because it was an unconscionable contract of adhesion.

1. *There is no evidence on which a reasonable jury could base a finding that there was no mutual assent.*

One of the components of a valid contract is mutual assent to its terms. *See Cuppy v. Gen. Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 632 (Ky. 1964). However, "[a] fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Finance Servicing Corp.*, 47 S.W.3d 335 (Ky. Ct. App. 2001). Furthermore, "any ambiguities in contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Kruse v. AFLAC Int'l*, 458 F. Supp. 2d 375, 382 (E.D. Ky. 2006) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Jaramillo initialed the Agreement and signed the Policy Sheet, both of which included statements that he understood the terms and was assenting to arbitration of disputes. His argument that he did not receive the "Dispute Resolution Program" materials, as asserted in his unsigned declaration, does not alter the fact that he assented to the basic terms of the Agreement, which bound him to arbitrate all

11

disputes.

Furthermore, even if the Program was not explained and he did not receive the materials, this fact is irrelevant to the validity of the Agreement.  The Agreement explicitly references the Dispute Resolution Program.  Under the terms of the Agreement, by assenting to it he gave Thomas and King permission to delete or change provisions of the Dispute Resolution Program, he promised to follow "all steps of the Dispute Resolution Program," and he declared that he had "received an explanation of the Program with [his] orientation materials."

As additional support for his contention that there was no mutual assent, Jaramillo points to the assertion in his Declaration that after he signed the agreement, he told Delgado that he did not think the agreement applied to him, as it seemed directed toward managers and he was not a manager.  According to Jaramillo's Declaration, Delgado verbally confirmed that the contract actually did not apply to Jaramillo because in September of 2004, Jaramillo was not a manager. As support for this version of the facts and as further proof of a lack of mutual assent, Jaramillo points to the fact that Delgado did not sign the Policy Sheet.

Jaramillo's argument fails.  First, while the FAA does require a written agreement, it does not require that the agreement be signed by either party.  *See* 9 U.S.C. §2; *Seawright*, 507 F.3d at 978.  Thus the lack of Delgado's signature has no effect on whether the company agreed to, or is bound by, the Agreement.

Secondly, in arguing lack of mutual assent due to Delgado's verbal

12

confirmation that the contract did not apply to Jaramillo, Jaramillo essentially is arguing that Delgado verbally rescinded the written contract between them.  Under Kentucky law, any subsequent modification or abandonment of a written agreement must be proven by clear and convincing evidence.  *Dalton v. Mullins*, 293 S.W.2d 470 (Ky. 1956) (citing *Dehlinger v. Graue*, 38 S.W. 2d 246 (Ky. 1931)).

Thomas and King has presented evidence not only that Delgado never verbally rescinded the contract but also that in September of 2004, Jaramillo was in fact a manager.  (R. 21, exhibit 2, Affidavit of Raul Delgado; R. 21, exhibit 3, Affidavit of Dana Brummett and attached letter).  Jaramillo's self-interested declaration simply does not overcome this evidence and prove otherwise such that a reasonable jury could find clear and convincing evidence of a rescission.

2.      *There is no evidence on which a reasonable jury could base a finding that the agreement was not supported by adequate consideration.*

Jaramillo argues that no benefit or promise of a benefit was given to him by Thomas and King in consideration for his promise to submit any disputes to arbitration.[6]  Thomas and King offers two possible sources of consideration: Thomas and King's continued employment of Jaramillo or its reciprocal promise to

---

[6]The defendant raised the issue of valid consideration in passing in his response to the plaintiff's motion for summary judgment.  In his supplemental response, the defendant neglects to provide further argument for this position.  The plaintiff considers the defendant's argument that the clause was unconscionable due to the fact that it "does not grant Jaramillo any rights" (*See* Defendant's Supplemental Response, R. 20, p. 13) to be an argument that the contract lacked consideration, and the court will do the same.

submit to arbitration any dispute between the company and Jaramillo.

Consideration for a contract can be either "a benefit to the party promising or a loss or detriment to the party to whom the promise is made." *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. 1943)(quoting *Luigart v. Fed. Parquetry Mfg. Co.*, 238 S.W. 758, 760 (Ky. 1922). Kentucky courts also have defined consideration as "the reason which moves contracting parties to enter into [an] undertaking." *Cassinelli v. Stacy*, 38 S.W.2d 980, 983 (Ky. 1931).

A promise made by an employee in exchange for his continued employment by the company is a promise supported by consideration. *See Higdon Food Serv., Inc. v. Walker*, 641 S.W.2d 750 (Ky. 1982) (holding that where employee agreed to new terms of employment, employer's continued employment of employee constituted consideration for that agreement, just as if employee had been newly hired).

Jaramillo's denial that the agreement was a condition of his continued employment does not make it so. In support of his denial, Jaramillo points to the Agreement's statement that signing the Agreement does not change an employee's status as an at-will employee. This aspect of the contract is irrelevant. *See Higdon*, 641 S.W. 2d at 751 (noting that "[i]t makes no difference that [the employer] could have discharged [the employee] the next day. The point is that it did not have to hire him—or keep him on—at all."). It seems clear that Jaramillo was "moved by" the company's implicit promise to continue his employment.

14

Because the court finds adequate consideration existed, in the form of Jaramillo's continued employment, the court will not consider the plaintiff's alternate argument that Thomas and King made a reciprocal promise to submit any claims to arbitration.  It is not necessary for the parties to a contract to have reciprocal rights.  *See David Roth's Sons, Inc. v. Wright and Taylor, Inc.*, 343 S.W.2d 389, 390 (Ky. 1961).

3.   *There is no evidence on which a reasonable jury could base a finding that the agreement was an unconscionable contract of adhesion.*

First of all, the court notes that to the extent that Jaramillo's arguments go to the unconscionability of the contract as a whole (the "Policy Sheet")—rather than to the specifics of the arbitration clause, or paragraph, within that document— this dispute, if the arbitration clause is valid, would be required by the contract to be submitted to arbitration.  *See Manuel v. Honda R & D Americas, Inc.*, 175 F.Supp.2d 987, 990 (S.D. Ohio 2001) (citing *Prima Pain Corp. V. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)).  However, because the defendant's argument is somewhat muddled, the court will attempt to parse out those parts of his argument that relate specifically to the alleged unconscionability of the arbitration clause.[7]

---

[7]For example, the court will construe his argument that he had no meaningful opportunity to read the document as an argument that he did not have a meaningful opportunity to read the arbitration clause.  Similarly, his argument that he had no opportunity to bargain regarding the terms of the document or its policies will be construed as an argument that he had no opportunity to bargain regarding the

Jaramillo argues that the arbitration agreement was unconscionable because it was an adhesion contract.  Further, he asserts that he did not have a "meaningful opportunity" to read the Agreement, he had no opportunity to bargain as to its terms, he was told he must sign the document, including the Agreement, no representative of Thomas and King signed the agreement, and the Agreement was out of place in the document and therefore surprising (R. 20, p12-13).  Even taking these allegations as true, the court does not find adequate evidence to support a finding that the contract was unconscionable.

Under Kentucky law, a contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Conseco*, 47 S.W.3d at 342 n.20 (citation omitted).

When applying the contract law of states other than Kentucky, the Sixth Circuit has emphasized that implicit in the "take it or leave it" aspect of adhesion contracts is a final "element" of an adhesion contract: the person in the inferior position is unable to obtain the benefit of the bargain offered from any other source.  *See Seawright*, 507 F.3d at 976 (citing *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 380 (6th Cir. 2005); *Cooper*, 367 F.3d 493).  The Kentucky Court of Appeals has acknowledged the importance of this final characteristic of an adhesion contract.  *See Conseco*, 47 S.W.3d at 343 n.24 ("We

---

specific terms of the arbitration clause.

16

note, however, that the [parties who were in the inferior bargaining position] have

not alleged that they attempted to bargain for a different or for no arbitration

clause; nor have they alleged that the principal benefit they sought from this

bargain – credit to purchase a mobile home – was not reasonably available to them

from other sources.").

      Jaramillo has not alleged that he attempted to bargain for a different

arbitration term or that he would have been unable to find to find a job elsewhere.

He does point to the likelihood that his refusal to sign could have led to his

termination, relying on the Sixth Circuit's suggestion that "the threat of termination

from one's current employment would appear to be sufficient in itself to

demonstrate 'the absence of a meaningful choice for the party occupying the

weaker bargaining position.'" *Walker*, 400 F.3d at 385 (quoting *Cooper*, 367 F.3d

at 501–02).

      However, a contract is not unenforceable simply because it is an adhesion

contract. *Conseco*, 47 S.W. 3d at 342 n.20.  Even if it were an adhesion contract,

Jaramillo would still have to prove that it was an *unconscionable* adhesion contract.

*See Seawright*, 507 F.3d at 976.

      An unconscionable contract is one that "no man in his senses, not under

delusion, would make, on the one hand, and which no fair and honest man would

accept, on the other."  *Conseco*, 47 S.W.3d at 342 (citation omitted).  Whether a

contract is unconscionable must be determined by the court on a case-by-case

17

basis. *Id.*

There are two types of unconscionability: substantive and procedural.

Jaramillo argues only that this agreement is procedurally unconscionable.

Procedural unconscionability "pertains to the process by which an agreement is

reached and the form of an agreement." *Id.* at 342 n. 21(quoting *Harris v. Green*

*Tree Fin. Corp.*, 183 F.3d 173, 181 (3rd Cir. 1999)).  Factors such as whether the

problematic clause was concealed or disguised, whether a person of ordinary

experience and education could understand it, whether the signer had an

opportunity to read it, and whether the clause alters the underlying transaction in

any "extreme or surprising way"  are relevant to a determination of whether an

agreement is procedurally unconscionable. *Id.* at 343.

Here, the clause itself uses clear language such that an ordinary person could

understand it.  The clause does not alter the underlying transaction, Jaramillo's

employment with the company, in any extreme or surprising way.  The parties

dispute whether Jaramillo signed the Agreement in a "hurried" fashion.  Even taking

as true Jaramillo's declaration that he was indeed hurried and encouraged to sign

and return to work, that fact is insufficient to render the agreement

unconscionable.  Jaramillo was highly educated with two college degrees.  He was

capable of reading the agreement and does not assert that he requested additional

time and was denied.  The agreement was clear, with a heading of "Agreement for

Dispute Resolution Program" that even a quick perusal of the document would have

18

revealed.  Each paragraph of the Policy Sheet required the employee's initials, and

Jaramillo did initial next to the Agreement.  The typeface of the Agreement is

identical to the rest of the document.

As discussed in detail above, it was not necessary for a representative of

Thomas and King to sign the arbitration agreement in order for it to be enforceable.

Jaramillo has not presented sufficient evidence to create any genuine

dispute as to a material fact that affects whether the Agreement was

unconscionable.

C.   There is not sufficient evidence on which a reasonable jury could base a
     finding that Jaramillo did not knowingly and voluntarily waive his right to
     pursue his federal statutory claims in a court of law.

Jaramillo contends that he did not knowingly and voluntarily waive his right

to pursue protection of his statutory rights in a court of law and did not realize he

was giving up his right to a jury trial.  He argues that therefore he cannot be

required to give up the right to pursue his statutory claims in a judicial forum.

Federal statutory claims may be the subject of arbitration agreements.

*Circuit City Stores v. Adams*, 532 U.S. 105 (2001).  In order for an arbitration

agreement to encompass federal statutory claims, the employee must have

knowingly and voluntarily waived his right to bring those claims before a court.

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003).  The court

must decide whether such a waiver is knowing and voluntary on a case-by-case

basis.  *Id.*  The following factors are relevant to this determination: "(1) the

[employee's] experience, background, and education; (2) the amount of time the [employee] had to consider whether to sign the waiver, including whether the [employee] had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Id.* (quoting *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)).

The court finds no genuine dispute as to a material fact such that a reasonable jury could conclude that Jaramillo did not knowingly and voluntarily waived his right to pursue his employment claims in federal court.  First, Jaramillo was highly educated, holding two separate degrees, one in accounting and one in international business.  At the time he signed the waiver, he was an experienced employee of the company, having been with the company for over a year.  He was an adult, not a young teenager.  Second, although Jaramillo says he was hurried, he presents no additional evidence of a pressured situation, nor do the circumstances surrounding his signing suggest it.  *Cf. Walker,* 400 F.3d 380 (potential employees, obviously desperate enough for money to consider Ryan's low-wage jobs, were made to sign agreement in order to continue interview process).

Third, the language of the Agreement waiver was clear.  Broad language binding a party to arbitrate all disputes has been held to encompass federal statutory claims; by agreeing to such a broad agreement, the employee agrees to

arbitrate those statutory claims that fall within its scope. *See Palmer v. Prevost Car, Inc.*, No. 05-1040, 2006 WL 2035710, *5–6, 8 (M.D. Tenn. July 17, 2006) (citing *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983). Furthermore, the Dispute Resolution Program materials specifically list claims that must be arbitrated, including claims for discrimination based on national origin. By signing the Agreement, Jaramillo agreed that he had received these materials. An arbitration agreement need not specify that the person signing it is giving up his right to a jury trial. *Cooper*, 367 F.3d at 508 ("[T]his Court . . . has flatly rejected the claim that an arbitration agreement must contain a provision expressly waiving the employee's right to a jury trial ."); *see also Palmer*, 2006 WL 2035710 *4–5 (citing *Burden v. Check Into Case*, 267 F.3d 483 (6th Cir. 2001)(explaining that the "requirement of a clear waiver of the right to a jury trial must necessarily be satisfied by the signing of an arbitration agreement, as the Sixth Circuit considers such a waiver a "necessary and fairly obvious consequence" of an arbitration agreement").

Fourth, as discussed previously, there was adequate consideration for the waiver.

The evidence presented by the defendant is not sufficient to raise a genuine dispute as to any material fact relevant to whether he knowingly and voluntarily waived his right to pursue his statutory claims in a court of law.

D.     The arbitration forum is adequate.[8]

Jaramillo presents two arguments for his assertion that the Dispute

Resolution Program does not adequately protect his statutory rights.  First, he

argues that the Dispute Resolution Program is unenforceable because it does not

provide for a neutral arbitrator.[9]  According to the Dispute Resolution Program

materials, J.A.M.S./Endispute ("JAMS"), an independent arbitration company,

organizes and administers arbitrations brought under the Agreement.  Jaramillo

contends that because the financial relationship between JAMS and Thomas and

King is unknown, the arbitrator, eventually chosen by JAMS after the employee

eliminates any arbitrators he does not wish to hear the case from a pool of

candidates created by JAMS, is likely to be biased in favor of Thomas and King.  In

support of this claim, the defendant relies on *Floss v. Ryan's Family Steak House*,

211 F.3d 306 (6th Cir. 2000).

Jaramillo's argument that the Program does not provide a neutral arbitrator is

---

[8]The defendant did not raise, and so this court will not consider, the enforceability of the Dispute Resolution Program's cost-splitting provision or the provision entitling Thomas and King to recover all costs and attorney's fees associated with an employee's bypassing the arbitration process and filing a claim in a court.

[9]Although not clearly articulated in the defendant's pleadings, in challenging the neutrality of the arbitrator based on an alleged financial relationship between Thomas and King and J.A.M.S./Endispute, Jaramillo is asserting that the arbitrator-selection process is fundamentally unfair.  Such an argument is permissible at this stage of the proceedings.  "[T]he general rule prohibiting pre-arbitration challenges to an allegedly biased arbitration panel does not extend to an allegation that the arbitrator-selection process itself is fundamentally unfair."  *Walker*, 400 F.3d 380 at 385.

not persuasive.  To support his argument, Jaramillo hints at impropriety by stating that Thomas and King and the arbitration company "may have a financial relationship" and by asserting that JAMS is a for-profit company.  (R. 20, pg. 16).

In *Floss*, the financial relationship between Ryan's (the employer)  and EDSI (the arbitration program with which it had a contract)  was unknown and there was a potential for the arbitration company to be "biased in favor of Ryan's . . . because it has a financial interest in maintaining its arbitration service contracts with employers."  *Id.* at 313.  However, the court went on to observe that the record did not clearly reflect whether the company was for-profit and, as adequate evidence existed to void the contract on other grounds, it came to no conclusions as to the effect of EDSI's potential bias on the adequacy of the arbitral forum.  *Id.*

However, in *Walker*, the Sixth Circuit concluded that a for-profit contract between an employer and an arbitration company did render the arbitration process biased in the employer's favor*.* 400 F.3d 380.  As in *Floss*, the employer was Ryan's and the arbitration company was EDSI.  *Id.* The *Walker* court noted that EDSI was a for-profit business and that 42% of its gross income in the preceding year had come from Ryan's, creating a "symbiotic relationship" with Ryan's such that "Ryan's effectively determines the three pools of arbitrators."  400 F.3d at 386.

Jaramillo has not submitted any evidence that a similarly "symbiotic relationship" exists between Thomas and King and JAMS.   He asserts only that

23

JAMS is a for-profit company retained by Thomas and King.  An allegation in a party's pleading is not evidence.  *See* Fed. R. Civ. P. 56(e).

Furthermore, the mere existence of a contract for services between Thomas and King and JAMS does not render the arbitration process so unfair as to make it unenforceable.  *See Gilbert v. Big Sandy*, No.07-87, 2007 WL 2668137, *3–5 (S.D. Ohio Sept. 6, 2007) (concluding that where the contract between the employer and the arbitration company accounted for less than 1% of the company's business, such relationship did not pose the same "threat of potential bias" as the relationship at issue in *Walker*).  *See generally Shadeh v. Circuit City Stores*, 334 F. Supp.2d 938, 943 –45 (W.D. Ky. 2004) (noting that although these circumstances might give an employee "some concern about fairness, . . . higher courts have concluded that such agreements are generally permissible").

Aside from the unsubstantiated allegation that the JAMS arbitration process may be structurally biased towards the employer, Jaramillo makes no other argument that the arbitrator-selection process renders the forum inadequate.

Secondly, Jaramillo argues that the forum is inadequate because the attorney's fees provision in the Dispute Resolution Program materials does not adequately protect his statutory rights.

Statutory rights, such as those created by Title VII, may be subject to mandatory arbitration "[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum."  *Morrison*, 317 F.3d at

24

658 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)).

Therefore "any provisions in arbitration agreements that limit the remedies available

in the arbitral forum, compared to those available in the judicial forum, are . . .

unenforceable." *Id*. at 653.  "The critical question is whether the limitation on

remedies at issue undermines the rights protected by the statute." *Morrison*, 317

F.3d at 670.

Under Title VII, "a prevailing plaintiff ordinarily is to be awarded attorney's

fees in all but special circumstances." *Christiansburg Garment Co. v. EEOC*, 434

U.S. 412, 417 (1978).  Although the applicable provision of Title VII does not state

that a prevailing plaintiff is entitled to attorney's fees, "[i]f arbitration is to offer

claimants the full scope of remedies available under Title VII, arbitrators in Title VII

cases, just like courts, must be guided by *Christiansburg* and [therefore] must

ordinarily grant attorney fees to prevailing claimants." *Morrison*, 317 F.3d at 673

n. 15;[10]  *see also McCaskill v. SCI Mgmt Corp.*, 285 F.3d 623 (7th Cir. 2002)

(holding that arbitration agreement that did not provide for award of attorney fees

to successful Title VII claimant was unenforceable because "[t]he right to

attorney's fees  . . . is central to the ability of persons to seek redress from

_____

[10]In *Morrison*, the arbitration agreement at issue gave the arbitrator the
discretion to award the claimant attorney's fees but did not state that the arbitrator
should grant attorney's fees in accordance with applicable law.  *Id.*  The court did
not find that the provision was unenforceable.  *Id.*  The court reasoned that
because the wording of the provision closely followed the attorney's fees provision
in Title VII, it was valid and enforceable so long as the arbitrator, just like the court,
was guided by the principle expressed in *Christiansburg*.  *Id.*

violations of Title VII").

The arbitration process is apparently governed by two separate documents: the Dispute Resolution Program information distributed by Thomas and King and Employment Arbitration Rules and Procedures distributed by JAMS.[11]  The attorney-fee provision of the Thomas and King Dispute Resolution Program states that "the Arbitrator may assess your legal fees to the Company but only if the Arbitrator finds the Company's behavior to be particularly egregious."  (R. 19, Step IV, ¶4). According to this provision, then, to be awarded attorney fees, a Thomas and King employee would have to show both that the company violated his statutory rights and also that the company's actions reached some higher threshold of being "particularly egregious."  However, JAMS Rule 24(g) provides that the arbitrator may allocate attorney's fees and expenses and interest "if provided by the Parties' agreement *or* allowed by applicable law."  *See* Rule 24(g) (emphasis added).

The plaintiff points to Rule 4 of the JAMS rules as a severability clause and argues that any problematic provision could therefore be easily severed.  *See Morrison,* 317 F.3d at 675 (citing *Accord Great Earth Cos. v. Simons*, 288 F.3d 878, 890–91 (6th Cir. 2002)) ("[W]hen the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement.").  The plaintiff does not

---

[11]These two documents were presented to the court at a hearing as one exhibit (R. 19)("Dispute Resolution Program") and were attached by the defendant as one exhibit to his response.

recognize any difficulty in using a JAMS rule of severability to sever a provision that is Thomas and King-specific. The defendant does not address the issue, as he asserts that the problematic provision renders the whole contract unenforceable.

Furthermore, the intent that the process be guided by JAMS rules is clear, and the arbitration information in the Thomas and King information explains the JAMS process. The two documents are certainly interrelated.

However, because of the disjunctive "or" in the JAMS rule, it is not necessary to address fully whether the problematic language can be severed from the Thomas and King materials. According to the rules, the JAMS arbitrator may *either* follow the employer's rules (here, that the prevailing employee gets attorney's fees only upon a finding that Thomas and King's actions were "particularly egregious") *or* follow applicable law. Provisions that either direct the arbitrator to grant attorney's fees according to applicable law or that mimic the language of Title VII and are applied in accordance with *Christiansburg* adequately protect a prevailing employee's statutory rights under Title VII and are enforceable. *Morrison,* 317 F.3d at 675.

**IV. Conclusion**

Accordingly,

      **IT IS ORDERED:**

   (1)   The plaintiff's motion for summary judgment (R. 7) is **GRANTED**;

   (2)   The plaintiff's motion to dismiss the defendant's counterclaim (R. 5) is **DENIED without prejudice**; and

27

(3)   The defendant's motion to stay (R. 3) and motion to withdraw motion to stay (R. 24) are **DENIED as moot**.


Signed on  March 9, 2009

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

28